The Judges of the United States Court of Appeals for the Fourth Circuit. All right, you can be seated. All right, we're ready for the argument in the first case. Mr. Nadelink, get that close to correct. May it please the Court. I'm Eric Nadelink. I represent Foster Wheeler. Foster Wheeler made main propulsion boilers for Navy warships. Mr. Ripley, in this case, claimed that he was exposed to asbestos from some of those boilers. The steam from the marine propulsion boilers power everything aboard these Navy warships. It's the electricity. It's the heat. It's the propellers of the ship. Without these boilers, the ship doesn't run. These are quintessential government contracts. They're for millions of dollars. These boilers are 30 feet tall. They weigh hundreds of tons. They're subject to thousands of pages of military specifications, months of back and forth between the government and the contractor, and testing at a naval lab in Philadelphia before the approval process is through and the boilers can be put aboard the ship. They're the quintessential military contract that's subject to the government contractor defense, which is why there's no design defect claim in this case. The only issue, the only issue today is whether the government contractor defense also applies in failure-to-warn cases. And the district court in this case decided that it does not. The district court has one ruling and one ruling only with no analysis, and that is that the government contractor defense doesn't apply in failure-to-warn cases. And that's demonstrably wrong. But it says consistently in the history of that district that's been the ruling and the position taken by every judge in every case. It's the custom and practice in Newport News. There's no question about that. It's the exact opposite of the jurisprudence around the country and in every federal appellate court that has ever addressed the issue. There's no other court in the country that has ruled that way. Is that correct? There are courts that have granted remands, but I don't think it's because they say that the government contractor defense is per se not applicable in failure-to-warn cases. They say that somebody didn't meet the standard. So the Eastern District of Virginia is an outlier. To my knowledge. I mean, there's a lot of federal court cases out there. I don't believe there are any cited in the briefs. But the Eastern District of Virginia is acting upon custom and practice in the Eastern District. I know of other decisions where federal courts have said, you haven't stated facts sufficient to articulate the defense, you haven't met the standard, and therefore we're remanding the case. I haven't seen another court that says there is no such thing as the government contractor defense in failure-to-warn cases. That's a Newport News thing. And there's no reasoning or rationale. It's simply based upon prior practice over dozens of years. The district court is wrong on that. Certainly every appellate court that has addressed this issue has found that the failure-to-warn, there's no exception for failure-to-warn cases. If the government contractor defense is applicable in failure-to-warn cases, that's at least the second, fifth, sixth, ninth that are addressed in the briefs. I know even in this circuit in the Emory case was dealing with a similar issue. It cited all these authorities with approval. It ultimately ruled on different grounds, but it generally agreed with the reasoning in the authorities that have recognized the government contractor defense in the failure-to-warn context. Contrary to Plaintiff's argument, the government contractor defense also applies specifically in failure-to-warn cases involving asbestos litigation. Every federal appellate court that has addressed this issue has agreed that a defense exists there. Specifically there, we're talking about the Cuomo case out of the Second Circuit, the Leidy case out of the Ninth Circuit, all recent cases, the Ruppel case out of the Seventh Circuit. There's also the rulings, myriad rulings that have come out of the asbestos MDL in Philadelphia with Judge Robreno. And the lead case there is the Hagan case that's briefed extensively. I'm also aware that this circuit, after the briefing was done, in this case approved of the government contractor defense in asbestos cases in the failure-to-warn context. In the Hurley case out of Maryland just recently, and I believe, Judge Thacker, you were on that panel, but that's an unpublished decision that came out just recently. But given the existing case law is virtually unanimous on these issues, the appellee doesn't want to argue about what the law is with respect to government contractor and failure-to-warn. Ms. Ripley instead wants to pre-litigate the weight of that evidence for and against the merits of Foster Wheeler's government contractor defense in this particular case. I mean, essentially, she'd like to make this into a summary judgment proceeding, or worse yet, an appeal from a denial of summary judgment in this case, and she's wrong on that. This is a threshold issue of removal that has a very low standard. It's basically a pleading standard, if maybe a little bit more than that. The standard of removability under 28 U.S.C. 1442A1 is broadly permissive. It's evident in the statutory authority that's been briefed. The leading case on the issue is the Willingham case from the U.S. Supreme Court. That is effusive, that 1442 is in no way narrow. It's in no way limited. The right to removal is absolute whenever suit in state court is free. But, counsel, what is limited is the limitations of Article III subject matter jurisdiction with respect to the district court. Certainly. How do we balance that? Related, are you saying that we can't consider any evidence, any of the evidence? I mean, no matter how frivolous the defense is, that as long as you say so, that's it? Well, you say frivolous. I mean, that's not the case here. I understand that. Because there is evidence. I mean, if you're asking is, is this purely just a pleading standard? Is this a notice pleading? Right. That's not the case here, but I think it probably should be. I mean, I think if that was the case, I think that removal would still be proper. Because there's not always going to be a case where we have the contract. Maybe we need a FOIA request. Maybe we need discovery subpoena powers to get what the contract looks like. Maybe we don't have access to witnesses who can provide an affidavit. We need discovery. We need the subpoena power of the court to get that kind of discovery. Those people's government contractor defense are just as valid and ought be litigated in the federal forum just like our case should be. So we have some contracts. We have access to witnesses. We'd be able to put on some evidence. But I think a pleading standard would be appropriate. Although you don't need to decide that here. I mean, here, and the courts, I think, have really backed that up. I mean, the Hagan court and the Ruppel court have said, really what you're trying to put on is a plausible argument that you're entitled to a federal forum. And the reason why that you're doing that is because Congress has stated and the Supreme Court has stated that when there is this federal interest, this federal immunity that's at issue, we want to make sure that the merits of that issue get argued in the federal forum and not in a state forum, not in Newport News, in a state court in Newport News, but in a federal court where there's less opportunity for bias. And that's the exact purpose that is articulated both by Congress and by the Supreme Court in the Willingham case. And you can't pre-litigate the merits. And what you're really doing is if there's some kind of plausible argument that you are entitled to federal immunity, you are entitled to have that heard in a federal court and not summarily dismissed and remanded back to state court based on custom and practice in a local jurisdiction. That's the point. So the attempts to pre-litigate this case, which is the bulk of both appellees' brief, is inappropriate in this context. And I think this circuit has recognized that, particularly in the Calabash case, where you observed that the right of removal under 1442, unlike other removal statutes, is broadly permissive and it has to be broadly construed. It's not a narrow statute at all. In fact, in Calabash you said it's improper for the court at the removal stage to consider whether the claimed immunity actually attaches or not. It's enough alone that the defendant's alleged misconduct grew out of acts performed in the course of his duties as a federal officer or a contractor in this case. That's the point. And the other circuits have agreed. In the Cuomo case, it says precisely in those cases where plaintiff challenges the factual sufficiency of the defense, that's when the defendant's right to have the evidence heard in the federal forum is the most important. The Ruppel case that was just recently decided in the Seventh Circuit. At the removal stage, the court's concern with the assertion of federal immunity is who makes the determination, i.e., the federal court, not what the determination will ultimately be. It's a plausibility standard at most. And the most in-depth analysis of this issue was the Hagen Court in the MDL, who went to all circuits and looked at everything and said, defendants are entitled to remove whenever it identifies facts which, viewed in the light most favorable to the defendant, would constitute a valid defense. So we clearly met that here, and I want to go through those elements. The only two elements that the appellee challenges here are the causal nexus element and the colorable defense element. So I want to go through the evidence that supports both of those issues. On the causal nexus element, you have to have a connection between the alleged misconduct and the government action that's at issue, the government discretion that's required. So here we have an allegation that Foster Wheeler failed to warn about asbestos hazards in boiler manuals and on the actual surface of boilers aboard Navy warships. The specific subjects of Plaintiff's failure to claim were items procured by the United States government under military contracts. So the nexus requirement here is a foregone conclusion. I think really most of the, if not all of the circuits, and I think actually the Supreme Court in Boyle, say that that sort of causal nexus requirement is actually subsumed within the three prongs of Boyle. So it doesn't really require separate analysis, but Plaintiff's brought it up, so I wanted to bring it up. Now, the colorable defense prong is really the meat of the argument. The government contractor defense in failure to warn cases requires a showing that the Navy exercised discretion and approved the content of the technical manuals and other communications that came with Foster Wheeler's boilers. Foster Wheeler's written materials conformed to that. Number two, Foster Wheeler's written materials conformed to what was approved. And three, that Foster Wheeler warned the Navy about the dangers that were known to Foster Wheeler, but not to the Navy. Now, on that first prong, the exercise of discretion, that comes straight out of Boyle. It comes straight out of the analysis of the Federal Tort Claims Act that immunity attaches with the exercise of discretion. Now, here we have the affidavits of Mr. Tom Schrode. Tom Schrode was the person who was in charge of managing these contracts with the Navy for boilers at the time that Mr. Ripley worked. And he testifies, he has personal experience about how the back and forth of this process went and that Foster Wheeler was not at liberty to put anything that it wanted in its manuals. The content was controlled by the United States Navy. Now, in the appendix also, there is attached what the appellee put into the appendix. It's a purchase order for one of the boilers, they claim. Now, this purchase order says the exact same thing that Mr. Schrode says. The purchase order says that you have to have detailed drawings that are submitted for approval. Those drawings are going to include anything that you're going to put on the surface of the boiler, any kind of a warning or any other instruction. There is a separate review and approval process for technical manuals. So if you're going to put anything in the content or technical manuals is going to be subject to the review and back and forth and approval process that's set forth actually in the purchase order. Then that purchase order also incorporates by reference another military specification. I think it's MIL B18381, which is the military specification for boilers. And that's been attached in the appendix, and it says the exact same thing. Technical manuals undergo, you have to be submitted to the Bureau of Ships. They have to be submitted to the supervisor of shipbuilding. They have to be submitted to the Navy Boiler and Turbine Laboratory for review and approval. There's no question that there is discretion being inflicted upon Foster Wheeler in the creation of the content of technical manuals and information plates on these boilers. Mr. Natalie, before you run out of time, and I'm going to get you to switch gears a little bit. I think it's unquestioned that for years and maybe decades, the rule in this district has been that you're not going to get into federal court this way. And I couldn't find, and maybe you all can enlighten me, any case where that issue was appealed to this court and we issued a ruling one way or the other or published or unpublished. So that makes me nervous to accept your argument. Now, what can you tell me that's going to make me feel better about upsetting what's been decades of rulings and apparent acceptance of those rulings by all these lawyers handling asbestos cases in a Navy shipyard district? Make me feel better about buying your argument. Complacency? They weren't my cases. I mean, the reason why I can tell you that this one, I mean, if they were my cases, I think they should be removed to federal court. And we have. And I'm the one trying this case if it goes to trial. And I requested to argue this because this is, you know, this case belongs in federal court. And why other people before me for decades didn't remove these cases or challenge this custom and practice in Newport News, I wish I could tell you. I wish I could tell you. But it's not right, and it's not the law. There's no question about that. Has there been an MDL of any of these asbestos cases? Yeah, an MDL. Has there been any MDL court? Oh, yeah, absolutely. Okay. And what did the MDL court hold? The MDL court has ruled, and there's at least four or five rulings in the briefs. Hagan is the leading case in the MDL that decided that these cases are both removable based on basically little more than a pleading requirement. They're removable to federal court. The Federer to Warren case is included in that. In fact, I won summary judgment in a different case in the MDL for General Electric, not for Foster Wheeler. But I won summary judgment in the Faddish case, which is also cited in the briefs. So the MDL courts have ruled your – have accepted your position as well. And that's what the MDLs are set up to do all the time is asbestos cases. That's all this MDL does. That's all Judge Rubino was doing for a long time. And the cases are not only removable, but you can win summary judgment on the government contractor defense exactly on the facts that we're talking about here. I've won summary judgment on it. Let me ask you the flip side of my original question. None of these experienced lawyers who have been representing asbestos manufacturers have wanted to come to federal court, apparently, have not tried real hard to come to federal court. Does that make you a little nervous in trying to get here when all these other experienced lawyers didn't want to? I'm thankful for the opportunity to be heard now. I mean, I can't speak for why – if people were afraid to come here beforehand, I think that was a mistake on their part. So I only have about 30 seconds left. I just want to say, so, I mean, there's no question that the contract documents show the exercise of discretion. The contrary specifications that the plaintiffs put forth are inapplicable. They're actually not applicable to boilers, and they're not applicable to technical manuals. On their face, they deal with packaging for hazardous chemicals. Now, but that's really the point that we're trying to make here. I can sit here all day and say my specifications call for discretion, and they can say, well, our specifications say you had to warn and there is no discretion. But then we're getting into the meat of it. We're arguing the merits, which is what we ought not be doing at the removal stage. Then we're getting to the merits of discovery, and the only way to get – we can't ask this court to decide whose specifications are correct, which ones cover the boilers. That's for discovery. That's for expert discovery. We don't even know who plaintiff's experts are yet. And that's precisely the reason why Willingham and all the other authorities have said, you just don't engage in this analysis now. It's a low standard. Thank you. Well, you've got some time remaining after we hear from Mr. Hardy. Thank you. Good morning. Mr. Hardy, are there any cases from this court ever adjudicating this issue? Not to my knowledge, Your Honor. I do know that the – My clerk is going to be relieved. The Emory case did say that, I think it was Judge Wilkinson that wrote that opinion, said that he had reviewed cases from other jurisdictions on whether failure to warn, whether the boil defense applies to failure to warn, and that he felt that they were well-reasoned, but he didn't have to reach that issue in that case. And I think that we need to define carefully what it is we're arguing about here, and that is the Eastern District, Norfolk, and Newport News Divisions, as well as most of the Virginia State Circuit Courts in the area, which don't have a big summary judgment practice, have always found summary judgment against the boil defense and failure to warn claims in asbestos cases. I don't know of any ruling that goes beyond that. And so Tate and Oshkosh and all these cases that go beyond the asbestos paradigm, I think, are a little bit different. And the reason why is because, as we note in our brief, beginning in 1979, when the manufacturers sued the United States for indemnity in the Glover case, Judge McKenzie, after a full trial, made findings of fact stating that the manufacturers, in fact, were warning throughout the 1960s. GAF's answers to interrogatories state in 1987, the year before Boyle was decided, they stated under oath that, pursuant to military specifications, we labeled and packaged our products and included the following warning. And then they had an exemplar warning, and that was in 1964. That was five years before Mr. Ripley ever started working in the shipyard. Judge McKenzie found in 1979 that Johns Manville, Eagle Pitcher, Pittsburgh Corning, and Owens Corning were all warning before Mr. Ripley ever started in the shipyard. This case, though, is different from Rupel and from Cuono and from Leahy in some very serious respects. And the number one respect is that none of those courts, the appellate courts, considered Federal Standard 313 or Military Standard 1341. Both of those standards are mandatory on all Department of Defense agencies. We do agree that the Federal Government exercised discretion. And guess what? The Federal Government's exercise of discretion required warnings on asbestos products, including the asbestos products that they were supplying as component parts, necessary component parts, with their boilers. Mr. Schroep, as he noted, states in his affidavit that they were required to abide by mill standard or mill specification MIL-B-18381. And he, in fact, states in there, and I'll find his exact quote, that they labeled the packages for the boilers, including all their component parts. This is at Joint Appendix 585. The boiler components, this is a quote, and related materials were wrapped and or boxed in accordance with the mill specs relating to the packaging and shipment of materials, which is also referenced in mill spec MIL-B-18381. Well, mill spec 18381 has two packaging provisions. One says, use your commercial practice in marking. The other one says, for onboard spare parts, which are required to provide to the Navy, including 200% of all the asbestos gaskets for the boiler, follow mill spec 129, which is the packaging and labeling military specification. We think, frankly, that this is a very clear issue. There is no dispute that I can find anywhere in the record by any of their witnesses that the Navy ever dictated their commercial labeling practices. The Navy didn't have the discretion to dictate their commercial what was going on. Well, I guess the problem with that is we're not at the evidentiary stage. Maybe they have evidence to contradict what you've said. And let me go back to the statement you made about the district court making findings of fact in a single case. How does that bind these litigants in this case? But I think that it demonstrates that we have basically what's called a black swan event. They say we weren't allowed to warn, but we have evidence in case after case after case after case, thousands of cases, according to Judge McKenzie in 1997 in the McCormick case, thousands of asbestos cases where they were allowed to warn. But I would like to get back to the exercise of discretion that the government actually did engage in, and that is in Fed Standard 313 and Mill Standard 1341. Both, as I said, were mandatory on all departments of the Department of Defense, including the Navy. Both of them were active throughout Mr. Ripley's employment at the shipyard, and both of them unambiguously on their plain language and plain terms applied to asbestos products being supplied to the Navy. In Appendix B of both standards, which contain virtually identical language, both standards state definition of hazardous material. Under both standards, any hazardous material being supplied to the Department of Defense had to contain warning symbols on the inner packaging, the intermediate packaging, and the outer packaging, and had to come with material safety data sheets detailing the hazards of the product. Can I get back to the beginning? Is it accurate that the Eastern District of Virginia is an outlier in these types of cases, that is, that it is the only federal court in the country that has said that there's no federal contract or defense available in failure to warn cases? No, ma'am. What other court? What I will say, I know that the Western District of Washington, I can't cite all of them, and I will say that a lot of cases have gone against them. Did you cite any of them? Are they in your brief? Your Honor, honestly, I can't remember. But what I will say is if I could get back to this definition of hazardous material, in our perspective, we're not asking them to prove their defense at this point. We're saying they have no defense as a matter of law because this definition of hazardous materials requires that a hazardous material is defined as a material having one or more of the following characteristics. Subsection B has a threshold limit value below 25 million particles per cubic feet for dust. Their own affiant, Captain Betz, states that asbestos has had a threshold limit value of 5 million particles per cubic feet since the 1940s. It's never been above that. It certainly sounds like you've been doing these cases for a long time. You have a lot of details about the facts of the affidavits. Is that right? Have you been doing asbestos cases a while? We have been doing asbestos cases for quite a while. All right. And you don't know, you can't tell me any other case then? The West Miller case from the Western District. What is it? The West Miller case from the Western District of Washington is one that comes to mind. But the thing about this is that none of these cases were appealable because they were remand cases until the recent amendments to the federal statute. But if I could go back to this, again, I think, and we argue, this is simply a plain language interpretation of a federal standard. And under the case that they rely on, which is the Lehti case, even Lehti states that even at the jurisdictional level, right now, where we are at when there has been a facial challenge to their allegations of jurisdictional facts, Lehti says that has to be handled in a summary judgment context. We are arguing that there is no dispute of material fact over the interpretation of federal standard 313 and mill standard 1341. Not one of their affiants has addressed either of those standards. And that is a huge distinction between Ruppel, Cuomo, and Lehti. In none of those cases did the courts of appeals consider those standards at all. We have been doing this for a long time. We are aware of all those standards going back a long time. Maybe some other plaintiff's attorneys aren't. And for whatever reason, they didn't put 313 or 1341 at all in the record of Cuomo. They didn't cite any specifications or standards anywhere in the record of Ruppel. And Lehti made a passing reference to those two standards in the motion for remand in the district court, but neither standard was ever briefed to the appellate courts. So none of those appellate courts has ever considered the impact of these two federal standards. The Navy can't exercise its discretion to direct a manufacturer to violate Department of Defense and federal standards. These are clear on their face. They don't require apparel evidence or extrinsic evidence. It's a matter of statutory construction. And so that is our argument. We're saying these are reasonably precise federal standards that they were required to conform to. Okay. I did see the Westmiller case in a footnote in your brief. Are you telling me when I go read that case, it will say that the federal contractor defense is not available in failure to warn cases? I don't think that's what it says. I think what it did was it remanded the case. I think what happened in that case is they struck. Okay, because I thought that's my question was, are there any other cases in the country that have held that the federal contractor defense is not available in failure to warn cases? And I thought I perhaps misunderstood. I thought you said. I misunderstood your question. All right. So do you understand my question now? I do. All right. As far as I know, most, if not all, of the current other jurisdictions find that it applies in failure to warn cases. But, again, many of these cases that they're relying on. It must be all of them because if there was any that supported your position, you would have that on the tip of your tongue. Ma'am, again, I don't recall any. But, again, that's on this factual record, which this court must deal with, you have two federal standards that required them to warn. Under Boyle, the second element of Boyle says that they had to conform to the reasonably precise specifications of the government. They admit necessarily by their litigation position and their reliance on these affidavits that they never warned. So how, as a matter of law, if they did not conform to these two clear, unambiguous federal standards that not one of their witnesses talks about, how can they say that they conform to these federal standards? They can't as a matter of law. And so that's our argument. I don't know why people in other jurisdictions don't always make that. And, unfortunately, the nature of our litigation is you have a lot of people who pop in and pop out. We've been doing it for a very long time. We've been aware of these for a long time. And that's why the judges in the Eastern District of Virginia, which has handled thousands of asbestos cases, has consistently said this just is not even a colorable defense. It's not plausible. And they admit they talk in terms of plausibility. Well, Iqbal says it has to have more than a mere possibility of succeeding. They don't even have more than a mere possibility of succeeding because they admit, they concede that they did not conform to these two federal standards. And so that's our argument. No subordinate Navy contracting officer in all of the various different procurements that they were involved in could disregard Federal Standard 313, disregard Military Standard 1341. We don't think you need to do it. But even if you want to go to extrinsic evidence, I want to talk briefly about Admiral Lehman's affidavit, which is the primary affidavit that they actually rely on. We found out just over 36 hours ago, Admiral Lehman passed away a year before they filed the affidavit in this case. He's passed away. And so this affidavit is not evidence ultimately, and he can't come and testify to whatever's in this affidavit. But on top of that, they didn't bother to tell the district court or this, they still don't concede to this court, that in 2010, three years after the 2007 nine-year-old affidavit they rely on from Admiral Lehman, my partner Bobby Hatton deposed Admiral Lehman, and he essentially disavowed every warning opinion that he has in the affidavit. It's a 180-degree turn. And he's not been deposed after that, so he hasn't reformed any decisions, and he can't come now and testify because he's dead. He's not competent to testify. So I don't know where they're getting their evidence from. There is no dispute. Well, that's not the only affidavit in the record, though, right? There are two other affidavits. Captain Vets does not touch on the standards or the warning issue at all. He's solely what the Navy knew and didn't know about asbestos hazards. So he goes solely to the third prong of oil. Mr. Schroep, their corporate representative, as I said, he says we packaged everything in accordance with MIL-B-18381. And as I said, the plain language of MIL-B-18381, which Mr. Schroep says was incorporated into every contract, says supply it and mark it in accordance with your commercial practices. When did the Navy have the decision-making discretion to dictate to a private entity what to put on their commercial packaging? They don't. Just as Alvin Ansarovich, one of the deponents whose depositions we put in the record, said MIL-129 and all of these marking and labeling standards were minimum requirements. We want you to put at least this information on. But he testified, and he was the head of the NAVSEA labeling and packaging division throughout this period of time. From 1965, four years before Mr. Ripley's service, all the way to 1979. Actually, he retired in, I think, 80. But he was deposed in 1979, which is about when Mr. Ripley left civil service. And he said we would never reject a package with a warning on it. Mr. Hart, let me interrupt you just a second. When I listen to your argument, it seems to me that we would have to get pretty deep into the merits to make a decision about the validity of this defense and to test whether or not it's frivolous or not. And it just seems to me, listening to your recitation of a great deal of evidence, that we are getting, as has been argued, close to the summary judgment stage, which I don't think is the depth a court is expected to go into just to decide, well, not a claim where a defense is frivolous. So I would expect, really, on a frivolous argument, you to be able to come forward with one or two items of evidence or arguments that would lay the issue to rest and slam the door. Well, I believe we have done that, Your Honor. And the one or two items of evidence is Federal Standard 313 and Mill Standard 1341. They don't have a single affidavit, any testimony, that refutes what we say about these. And the plain language of those two standards required them to warn. It's just as if we're not asking for them to have to prove their defense. We're saying they have no colorable defense at all, and the term colorability cannot be excised from the test. That's for Article III jurisdiction, as Judge Diaz brought up. But in addition, the only court that's really looked at this, the only appellate court that I'm aware of that's looked at this factual challenge issue is Latie, upon which they rely. Mr. Hardy, can I ask you, and I think I understand what you're saying, so with respect to the Schroep affidavit, when he says that Foster Wheeler was not permitted under the specifications, regulations, and procedures, and especially under actual practices as they evolve in the field to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel beyond those required for the Navy, that's not at all inconsistent with your position that the requirements are set out by these regulations. Is that what you're saying? Exactly. And the regulations not only allowed but required them to put the asbestos warnings on them. So when he says we weren't allowed to put anything on these packages other than what's allowed by standards, we're giving you the standards that told them they were allowed to do it. And so that really is the point. They were allowed to do that. And, again, going back to Latie, Latie, which is the only district court, I'm sorry, circuit court in the country that I think has really hit the factual attack issue here and the level of inquiry for that said that when there is a factual attack on jurisdictional facts, you have to employ a summary judgment standard. And they cite to Hertz v. Friend, which is the United States Supreme Court's 2010 decision, that also imports that standard. And Hertz, in turn, cites back to McNutt, a 1929 U.S. Supreme Court case, which says that the court must satisfy itself that it has Article III jurisdiction. And we don't believe this Court does. Frankly, they did not conform to the reasonably precise specifications and standards set forth in Fed Standard 313 and Bill 1341. I see my time has expired. I appreciate your noting that, Mr. Hardy. You're one of the few lawyers that's not colorblind. I look at colors very closely. Thank you. Mr. Nadelink, you have a few minutes remaining. Your Honors, thank you. I think I have determined why at least some of these cases haven't been appealed beforehand, because Section 1447 was only amended fairly recently to allow a right of appeal from these remand issues. So that could be one of the reasons why we were talking about earlier. The other issues I wanted to bring up is the layman versus Shrope. Mr. Shrope and Mr. Layman, Admiral Layman, basically say the same thing, but one says it from the corporate side and one says it from the Navy side. Well, one says that from the grave, and one says it from the grave. That's true now, but their testimony is redundant. It agrees with each other, and it covers the exact same ground. Now, the other thing that I wonder, the standards that Mr. Hardy keeps on referring to are the wrong standards. On their face, and they're in the appendix, the one I just picked up is at page 280 of the appendix, is the military standard for symbols for packages and containers for hazardous industrial chemicals. This is not the standard for what you put on boilers. It's not the standard for what you put in boiler manuals. They're just citing the wrong standard, and they're asking you to say that their standard is right, and the standards that we're relying upon are wrong, which requires – I'm not asking you to say that we're right and they're wrong. All I'm asking is that we acknowledge that there's a dispute here that ought to be – that needs to be determined in federal court and not in state court, and not summarily say that some standard that covers hazardous chemical packaging somehow dictated what you're supposed to put on a boiler, a metal boiler. And that's a factual dispute. And the fact that we're digging into the merits dictates that we ought to be in federal court litigating this issue. The Lady case, the plaintiffs are wrong on the Lady case. The Lady case is a removal case. It says all you need to have is a colorable defense. It relied on the same types of affidavits that we use in this case. Their reference to summary judgment is by analogy – it's an inverse analogy. The summary judgment standard favors the non-moving party, the non-remanding party. It favors us. So if there's any material fact in dispute, the case stays in federal court and doesn't get remanded. So the summary judgment standard he's referring to is actually flipped over and is in the favor of the removing party in this case, and that's how it's referred to in Lady. The Westmiller case doesn't say what Mr. Hardy said it did originally, but it seems like he corrected himself. It says, while it is true that Mesa requires only a colorable federal defense, Viad has not produced any evidence that would even meet that minimum standard. So it totally agrees that the defense exists. It's just saying that the defendant in that case failed to even reach the minimum level of submitting the affidavits or whatever to get above the minimum standard that's required that's allowed in 1442. I have eight seconds. I'll see that. I thank you very much for the opportunity. Thank you. We'll come down to Greek Council and then go into our next case.
judges: William B. Traxler Jr., Albert Diaz, Stephanie D. Thacker